Daniel S. Brome, CA SBN 278915
dbrome@nka.com
NICHOLS KASTER, LLP
One Embarcadero Center
Suite 720
San Francisco, CA 94111
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

M. Brett Burns, CA SBN 256965
Matthew Bobb, CA SBN 253308
HUNTON & WILLIAMS, LLP
575 Market Street
Suite 3700
San Francisco, CA 94105
Telephone: (415) 975-3700
Facsimile: (415) 975-3701

Michele R. Fisher, MN Bar No. 303069
NICHOLS KASTER, PLLP
4600 IDS Center
80 South 8th St.
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
*Admitted pro hac vice*

Attorneys for Plaintiff and the putative
classes

# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

Marc McCulloch, individually, on behalf of
others similarly situated, and on behalf of the
general public,

                    Plaintiff,

    v.

Baker Hughes Inteq Drilling Fluids, Inc.,
Baker Hughes, Inc., and DOES 1-50,
inclusive,

                    Defendants.

Case No. 1:16-cv-00157 DAD-JLT

**NOTICE OF MOTION AND
UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES**

**Date:         May 16, 2017
Time:         9:30 a.m.
Courtroom: 5, 7th Floor**

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPRROVAL OF SETTLEMENT

PLEASE TAKE NOTICE that on May 16, 2017, at 9:30 a.m., in Courtroom 5, 7th Floor, 2500 Tulare Street, Fresno, California, Plaintiffs will and hereby do move this Court for an order preliminarily approving the Parties' settlement, and authorizing distribution of notice.

This motion is based upon the notice of motion and motion, the accompanying memorandum of points and authorities, all accompanying declarations and exhibits, and the papers, records, and pleadings on file in this action. Defendants do not oppose this motion.


Dated: April 10, 2017                    NICHOLS KASTER, LLP
                                         By: s/  Daniel S. Brome
                                         Daniel S. Brome
                                         Attorneys for Plaintiff and those similarly situated

# TABLE OF CONTENTS

I.      INTRODUCTION....................................................................................1

II.     FACTUAL BACKGROUND...................................................................1

   A. Plaintiff's Claims.............................................................................1

   B. Procedural Background .................................................................2

III.    SETTLEMENT TERMS AND RELIEF OBTAINED....................2

      1.  Settlement Amount .................................................................2
      2.  Scope of the Settlement Class................................................3
      3.  Allocation and Settlement Offers...........................................3
      4.  Settlement Administration .....................................................3
      5.  Non-Reversionary Settlement.................................................4
      6.  Release .....................................................................................6

IV.     ARGUMENT .........................................................................................6

   A. The FLSA Settlement is a Reasonable Compromise of a Bona Fide
      Dispute ...........................................................................................6

      1.  Risk of Decertification............................................................6
      2.  Entitlement to Overtime..........................................................6
      3.  Amount of Overtime ...............................................................7

   B. Proposed Classes Satisfy the Requirements of Rule 23(a) ..............9

      1.  Numerosity................................................................................9
      2.  Commonality............................................................................10
      3.  Typicality..................................................................................11
      4.  Adequacy .................................................................................12

   C. The Proposed Classes Satisfy the Requirements of Rule 23(b)(3).12

   D. The Proposed Settlement is Fundamentally Fair, Adequate,
      and Reasonable..............................................................................13

      1. The strengths of Plaintiffs' case.................................................14
      2. The risk, expense, complexity, and duration of further litigation..14
      3. The risk of maintaining class action status through trial ...............15
      4. The amount offered in settlement ................................................15
      5. The extent of discovery completed and the stage of proceedings .16
      6. The experienced views of counsel ................................................16
      7. The views of class members .......................................................16

**E.  The Court Should Approve the Requested Notice Forms**..............17

**F.  The Court Should Approve the Requested Attorneys' Fees on a Later Motion** .................................................................17

   1.  The Percentage-of-the-Benefit Method Is Warranted in this Case .......................................................................18
   2.  The Percentage Requested by Class Counsel is Fair and Reasonable...............................................................18
       **a.  The Result Obtained for the Class and Similar Awards** ......................................................19
       **b.  Class Counsel's Experience and Skill Required and Complexity of Issues**................................20
       **c.  Risk of Litigation and Contingent Fees** ........................20
       **d.  Reaction of the Class**........................................21

**G.  The Court Should Approve Costs of up to $20,000** ........................21

**V.       CONCLUSION**.................................................................21

## TABLE OF AUTHORITIES

## CASES

*Adoma v. Univ. of Phoenix, Inc.*,
913 F. Supp. 2d 964 (E.D. Cal. 2012)..........................................................................19, 20

*Alexander v. FedEx Ground Package System*,
765 F.3d 981 (9th Cir. 2014) .....................................................................................6, 14

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)..........................................................................................................12

*Armstrong v. Davis*, 2
75 F.3d 849 (9th Cir. 2001) ......................................................................................10, 11

*Ayala v. Antelope Valley Newspapers, Inc.*,
59 Cal. 4th 522 (2014) ........................................................................................................7

*Baganha v. Cal. Milk Transport*,
No. 1:01–cv–05729–AWI–LJO, Doc. No. 147 .................................................................19

*Barbosa v. Cargill Meat Sol. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................. *passim*

*Bautista v. Harvest Mgt. Sub LLC*,
2014 WL 12579822 (C.D. Cal. July 14, 2014)...........................................................19, 20

*Benitez v. Wilbur*,
No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) .........................19

*Boeing v. Van Gemert*,
444 U.S. 472 (1980)..........................................................................................................18

*Bond v. Ferguson Enterprises, Inc.*,
2011 WL 2648879 (E.D. Cal. June 30, 2011) ..................................................................19

*Boucher v. Shaw*,
572 F.3d 1087 (9th Cir. 2009) .............................................................................................6

*Chavez v. Petrissans*,
Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009)...................19

*Collins v. Cargill Meat Solutions Corp.*,
274 F.R.D. 294 (E.D. Cal. 2011) ........................................................................................9

*Craft v. Cty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................................18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Duran v. U.S. Bank, NA,*
59 Cal. 4th 1 (2014) .................................................................................8

*Franco v. Ruiz Food Prod., Inc.,*
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012).................................19

*Garcia v. Gordon Trucking, Inc.,*
2012 WL 5364575 (E.D. Cal. Oct.31, 2012) ...................................19

*Gen. Tel. Co. of the Nw., Inc. v. EEOC,*
446 U.S. 318 (1980).....................................................................9

*Glass v. UBS Financial Services, Inc.,*
2007 WL 221862 (N.D. Cal.2007) ...................................................18

*Graham v. Daimler Chrysler Corp.,*
34 Cal. 4th 553 (2004) ...............................................................20

*Gutierrez v. Kovacevich "5" Farms,*
2004 WL 3745224 (E.D. Cal. 2004).................................................13

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir.1998) ..............................................10, 11, 12, 14

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) ......................................................9

*Harris v. Palm Springs Alpine Estates, Inc.,*
329 F.2d 909 (9th Cir. 1964) ......................................................9

*Hendershot v. Ready to Roll Transportation, Inc.,*
228 Cal.App.4th 1213 (2014) .......................................................10

*Hensley v. Eckerhart,*
461 U.S. 424 (1983)......................................................................19

*In re Mercury Interactive Corp. Securities Litigation,*
618 F.3d 988 (9th Cir. 2010) ......................................................17

*Johnson v. California,*
543 U.S. 499 (2005)....................................................................10

*Keen,*
2016 WL 3253895 ......................................................................14

*Knight v. Red Door Salons, Inc.,*
No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ..................17,18

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal. 5th 480 (2016) ...................................................................................................18

*Lealao v. Beneficial California, Inc.*,
82 Cal. App. 4th 19 (2000) .........................................................................................18

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ....................................................................................13

*Lynn's Food Stores, Inc. v. U.S.*,
679 F.2d 1350 (11th Cir. 1982) ...............................................................................6, 8

*McPherson v. LEAM Drilling Sys., LLC*,
2015 WL 1470554 (S.D. Tex. 2015) ............................................................................6

*Ma v. Covidien Holding*,
2014 WL 360196  (C.D. Cal. Jan. 31, 2014) ................................................................5

*Multi-Ethnic Immigrant Workers Organizing Network v. City of Los Angeles*,
246 F.R.D. 621 (C.D. Cal. 2007) ...............................................................................11

*Murillo v. Pac. Gas & Elec.*,
266 F.R.D. 468 (E.D. Cal. 2010) ...............................................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)..................................................................................8

*Officers for Justice v. Civil Service Commission*,
688 F.2d 615 (9th Cir. 1982) .................................................................................8, 14

*Ontiveros v. Zamora*,
2013 WL 3057506 (E.D. Cal. 2014)................................................................10, 12, 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ......................................................................................18

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ....................................................................................17

*Randall Willis et al. v. Cal. Western Transport* and *Earl Baron et al. v.
Cal Western Transport* (consolidated cases),
No. 1:00–cv–05695–AWI–LJO ..................................................................................19

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05–cv–0484–DLB, 2007 WL 3492841 (E.D. Cal. Nov.14, 2007) ...................19

*Six Mexican Workers v. Az. Citrus Growers*,
904 F.2d 1301 (9th Cir.1990) .....................................................................................19

-vii-

*Sloane v. Gulf Interstate Field Servs., Inc.*,
2017 WL 1105236 (M.D. Pa. Mar. 24, 2017)......................................................................7

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................6. 9

*Syed v. M-I, L.L.C.*,
2014 WL 6685966 (E.D. Cal. Nov. 26, 2014) ...................................................6

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir.1996) ............................................................................13

*Vasquez v. Coast Valley Roofing, Inc.*,
670 F.Supp.2d 1114 (E.D. Cal. 2009)................................................................9

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................18, 19

*Vasquez v. Jim Aartman, Inc.*,
No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 ...............................................19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................18

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001)....................13

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) .................................................................................9, 12

Fed. R. Civ. P. 23(e)(1)(c) ..............................................................................13

Fed. R. Civ. P. 23(c)(2).................................................................................17

29 C.F.R. § 778.112........................................................................................5

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL                    CASE NO. 16-CV-00157-DAD

1
2
3
4
5
6
7
8

## I.   INTRODUCTION

Plaintiff Marc McCulloch ("Plaintiff") seeks preliminary approval of a $3,000,000 class action settlement on behalf of approximately 48 individuals[1] who worked for Baker Hughes as directional drillers and were classified as independent contractors.   This settlement provides excellent and substantial value for individuals with difficult claims, provides for prompt and certain payment, and avoids the need for drawn out litigation.   The Court should grant preliminary approval so that notice of the settlement may be distributed to the Opt-in Plaintiffs and the Class Members (collectively, "Plaintiffs").

9

## II.   FACTUAL BACKGROUND

10

### A. Plaintiff's Claims

11
12
13
14
15

This hybrid class and collective action was filed on February 3, 2013.   Plaintiff asserted claims under the Fair Labor Standards Act ("FLSA") as well as California and Pennsylvania state laws.   (ECF No. 1.)   Defendants Baker Hughes Inteq Drilling Fluids, Inc., ("Inteq") and Baker Hughes Inc., ("Baker Hughes") (collectively "Defendants") filed an Answer on March 14, 2016, denying all liability and asserting numerous affirmative defenses.   (ECF No. 8.)

16
17
18
19
20
21
22
23
24

Directional drillers are responsible for drilling horizontal or curve wells for Defendants' clients—generally energy companies—to recover oil and gas according to a well plan.   Baker Hughes directly employs numerous directional drillers.   Until a year ago, Baker Hughes also used some directional drillers who were classified as independent contractors (often called consultants), who were provided and paid by several third party contracting companies.   These consultant directional drillers (the Plaintiffs here) were similar to employee directional drillers in terms of their job duties; however, unlike the employees, the independent contractors were paid exclusively with a day rate, i.e., they received a set amount for each shift they worked, with no overtime premiums.

25
26

Plaintiffs assert that they are owed unpaid overtime under the FLSA and California and

27
28

[1] There are 52 individuals included in the scope of the settlement, however, 4 are outside the statute of limitations or do not have valid claims, and so are not allocated any payment.   (*See* Brome Decl. ¶¶ 2, 3.)

-1-

1    Pennsylvania law.  Additionally, Plaintiffs assert California claims for meal and rest period

2    premiums, wage statement penalties, and waiting time penalties.

3        **B. Procedural Background**

4            On August 26, 2016, the Parties filed a stipulation for conditional certification and

5    distribution of judicial notice, which was granted on October 5, 2016.  (ECF Nos. 23, 26.)  By

6    the close of the notice period, 24 individuals filed consent forms to assert FLSA claims (the

7    "FLSA Opt-ins").  (Brome Decl. ¶ 2.)

8            As part of the stipulation for conditional certification, the parties agreed to mediation, and

9    to participate in limited discovery directed toward early resolution.  (ECF No. 23.)  To that end,

10   Plaintiff took a partial 30(b)(6) deposition, Defendant took Plaintiff's deposition, and the parties

11   have exchanged thousands of pages of documents.  (Brome Decl. ¶ 4.)  Additionally, Plaintiffs'

12   Counsel interviewed the Opt-ins to understand their duties, hours worked, and both sides' claims

13   and defenses. (*Id.*)

14           The Parties mediated with Michael Loeb of JAMS on March 3, 2017 in San Francisco

15   California and reached an agreement to resolve the case, subject to Court approval.  (*Id.* ¶ 5.)

16   The Parties executed a terms sheet at the close of mediation, and signed a final settlement

17   agreement on April 7, 2017.  (*Id.*, Ex. 1.)

18          **III.    SETTLEMENT TERMS AND RELIEF OBTAINED**

19           The general structure and terms of the settlement are straightforward: following

20   preliminary approval, notice will be distributed and all Opt-in Plaintiffs who accept their offer,

21   and all Rule 23 Class Members who do not opt-out of the settlement (collectively, "Accepting

22   Plaintiffs"), will receive their allocation following final approval.  (Brome Decl. Ex. 1 (the

23   "Agreement").)  Several terms are explained in more detail:

24           1.    <u>Settlement Amount</u>.  Defendant will pay a total settlement amount of $3,000,000,

25                 which includes settlement payments to all Settlement Class Members, attorneys'

26                 fees and costs, and one-half of the employer's share of the applicable payroll

27                 taxes.  Costs of settlement administration and one-half of the employer's share of

28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL            CASE NO. 16-CV-00157-DAD

1    the applicable payroll taxes shall be borne by Defendant on top of the Settlement
2    Amount.  (Agreement § 3.)

3    2.    Scope of the Settlement Class.  This settlement includes all Opt-in Plaintiffs who
4          have filed consent to join forms, and two Rule 23 settlement classes.  The parties
5          stipulate to the certification of the Rule 23 State Law Settlement Classes for
6          settlement purposes only.  Accordingly, the Settlement also includes a California
7          Class, (defined as "All individuals who performed directional drilling services for
8          Defendants as consultants/ independent contractors in California at any time since
9          February 2, 2012 and who do not communicate a timely written request for
10         exclusion from the Settlement," and a Pennsylvania Class (defined as "All
11         individuals who performed directional drilling services for Defendants as
12         consultants/ independent contractors in Pennsylvania at any time since February
13         2, 2013 and who do not communicate a timely written request for exclusion from
14         the Settlement."). (Agreement § 4.)

15   3.    Allocation and Settlement Offers.  In consultation with Defendants' Counsel,
16         Plaintiffs' Counsel provided a reasonable allocation of the settlement amounts for
17         Plaintiffs.  These amounts have been adopted by Defendants as their individual
18         settlement offers to each Plaintiff, and are set out in Exhibit A to the Settlement
19         Agreement.  This allocation was calculated using data obtained from Baker
20         Hughes, combined with information from Plaintiffs.  (Agreement § 3, Ex. A.)
21         The allocation is described in more detail below.

22   4.    Settlement Administration. Rust Consulting, Inc. (the "Claims Administrator")
23         will issue IRS forms and distribute settlement payments out of a qualified
24         settlement fund.  The individual payments will be allocated 25% to alleged wages,
25         reported on an IRS Form W-2, and 75% to alleged non-wages (including
26         liquidated damages, interest, and penalties), reported on an IRS Form 1099.
27         (Agreement §§ 5, 8.)

28

5.   <u>Non-Reversionary Settlement</u>.  The settlement amount is non-reversionary. If any Rule 23 Class Members opt out of the settlement, amounts allocated to those individuals will not revert to Defendant, but will be reallocated to participating Plaintiffs.  (Agreement §§ 6.)  If checks remain uncashed after 90 days, those amounts will be donated to Legal Aid at Work as a *cy pres* recipient.  (Agreement § 9.)

6.   <u>Release</u>.  The release is tailored to the claims at issue in the case.  FLSA Opt-ins will give up their FLSA claims related to work as a consultant directional driller and Rule 23 Class Members will give up their California or Pennsylvania claims related to their work as a consultant directional driller.  (Agreement § 12.)

This settlement represents an excellent result for Plaintiffs and Class Members, both in terms of the monetary value, and the non-monetary terms.  Most importantly, the Settlement delivers an excellent value to Plaintiffs.  After a deduction for attorneys' fees (25%)[2], litigation costs (up to $20,000[3]), and the costs of employer-side payroll taxes (estimated at $40,000)[4], the Settlement will allocate around $2,190,000 to 48 individuals, which averages $45,625 per person.  Furthermore, the Settlement is non-reversionary.  If Class Members opt-out of the Settlement—meaning their claims would be dismissed without prejudice and they would be able to pursue a new action against Defendants—their allocation will be paid out to Settling Plaintiffs and will not revert to Defendant.  (Agreement § 6.)

As explained below, the settlement amount is reasonable in light of the damages calculated for Plaintiffs and the litigation risks.  Plaintiffs' Counsel calculated damages based on:

---

[2] Plaintiffs' Counsel has a one-third contingency agreement with their clients, but only seek 25% for this Settlement.

[3] To date, Plaintiffs' Counsel has incurred $15,857.64 in costs. Counsel will incur additional costs finalizing and implementing the settlement and obtaining approval. Counsel will provide a detailed explanation of costs in conjunction with the motion for attorneys' fees. (Brome Decl. ¶ 13.)

[4] The Parties estimated that number by assuming that 25% of the distribution amount will be wages, multiplying that amount by an estimated 14% tax rate, and dividing by 2 for the share to be paid from the Settlement Amount.  If this figure ends up being less than $40,000, any savings will be allocated to Plaintiffs.

-4-

1) each individual's day rate, as determined from Defendant's invoices; 2) each individual's actual days worked, as determined based on data produced by Defendant; 3) each individual's unique consent form filing date applying a three-year statute of limitations; 4) a reasonable assumption that each shift worked included 12.5 hours of compensable work time; 5) an assumption of 100% chance of success on the overtime claims under state and federal law; 6) overtime paid at .5 times[5] the regular rate for all hours worked over 40 in a workweek (and over 8 hours in a day under California law, plus double-time over 12 hours in a day); and 7) an assumption of a 50% risk of loss on derivative California claims (meal and rest periods, wage statement, and waiting time penalties).  (Brome Decl. ¶ 6.)

Using these assumptions, the total wage loss for the group (under the FLSA and applicable state overtime laws) comes to $2,080,984.61, which is $100,000 *less than* the distribution amount.[6]  With California's non-wage claims (meal and rest period penalties, wage statement penalties, and waiting time penalties), the total damages for the group under these assumptions come to $2,386,078.13.   In other words, the settlement will pay out—*after attorneys' fees and costs*—approximately 92% of the realistic value.  This is an exceptional value. *Compare with Ma v. Covidien Holding*, 2014 WL 360196, *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'")

Settlement payments range from $220.28, for an employee who worked only one covered week, up to $243,473.62 for the Named Plaintiff (who worked for three years and eight months). (Brome Decl. ¶ 8; Agreement Ex. A.)  Three others would receive over $100,000, thirteen would receive over $50,000.  As mentioned above, the average settlement payment, <u>after</u> attorneys' fees and costs, is significant—$45,625.  (*Id.*)  Plus, the release is narrowly tailored to the claims at issue.  (Agreement § 12.)

Finally, while not a term of the Settlement Agreement, Defendant has voluntarily ended

---

[5] *See* 29 C.F.R. § 778.112 (employees paid "a flat sum for a day's work" are entitled to "extra half-time pay" for hours over 40 in a workweek).

[6] If liquidated damages were awarded, this amount could increase (but not double, since liquidated damages are not available under California overtime law.

1  its practice of classifying some directional drillers as independent contractors, and now treats all

2  directional drillers as employees.  (*Id.* ¶ 10.)

3  ## IV.   ARGUMENT

4  Settlement of FLSA claims and class actions are subject to court approval.  *Lynn's Food*

5  *Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353–54 (11th Cir. 1982) (approval of FLSA settlements

6  favored where settlement reflects reasonable compromise of a bona fide dispute); *Staton v.*

7  *Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (where a class action settled before class

8  certification, court evaluates the propriety of the certification and the fairness of the settlement.)

9  **A.     The FLSA Settlement is a Reasonable Compromise of a Bona Fide Dispute**

10  Settlement of FLSA claims for wages are subject to court approval.  *Lynn's Food Stores,*

11  *Inc.*, 679 F.2d at 1353.   Court approval is favored "to promote the policy of encouraging

12  settlement of litigation," where the settlement reflects a "reasonable compromise over issues"

13  that are "actually in dispute."  *Id.* at 1354.  Here, the Settlement is a compromise over numerous

14  issues, so approval is warranted.

15  1.  Risk of Decertification.

16  While the Parties stipulated to conditional certification, Defendants would have

17  vigorously sought to decertify the collective had litigation proceeded. Other courts have granted

18  conditional certification in the oil industry.  *Syed v. M-I, L.L.C.*, 2014 WL 6685966 (E.D. Cal.

19  Nov. 26, 2014) (conditionally certifying group of drilling fluid specialists); *McPherson v. LEAM*

20  *Drilling Sys., LLC*, 2015 WL 1470554, at *12 (S.D. Tex. 2015) (collecting cases).   While

21  conditional certification is a lenient standard, decertification is a risk.

22  2.  Entitlement to Overtime.

23  Plaintiffs contend that under the "economic realities" test, Plaintiffs were employees, and

24  not of in business for themselves.  The primary consideration is the degree of control that the

25  alleged employer may exercise over the worker.  *See Alexander v. FedEx Ground Package*

26  *System*, 765 F.3d 981, 988–89 (9th Cir. 2014); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir.

27  2009) ("Where an individual exercises 'control over the nature and structure of the employment

28  relationship,' or 'economic control' over the relationship, that individual is an employer within

-6-

the meaning of the Act, and is subject to liability.").  Importantly, courts do not require control over every detail of the work.  *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 535 (2014).  Instead, what matters is the *right* to control; the employer may determine that it need not control certain aspects, but so long as it has the right to control, it is an employer.  *Id.*

Defendant, on the other hand, has asserted that it contracted with third-party labor providers who supplied these directional drillers, and the workers were properly classified as independent contractors.  Defendant emphasizes that many Plaintiffs were senior directional drillers, who often earned more than $1,000 per day, and who had the option to work as employees but preferred to be treated as consultants.  While Plaintiffs dispute the validity of these arguments, there is no doubt that they could have some emotional appeal.  *Sloane v. Gulf Interstate Field Servs., Inc.*, 2017 WL 1105236, at *1 (M.D. Pa. Mar. 24, 2017) ("this is not a putative class comprised of minimum wage earners who perform rote tasks in less than ideal conditions.  This is a class of professional pipeline inspectors—one of whom took home an annualized salary of $140,500—that nevertheless now seek to utilize the FLSA's overtime provisions to obtain additional pay they claim they are owed.").

Further, Defendant argues that even if Plaintiffs were employees, they were exempt from overtime under the administrative, executive, combination, or highly compensated exemptions.

This Settlement represents a favorable compromise between Defendants' and Plaintiffs' positions.

       3.  <u>Amount of Overtime</u>

The Parties agree that Plaintiffs' scheduled shifts were twelve hours, but disagree about Plaintiffs' actual hours worked.  Defendants contend that Plaintiffs had substantial amounts of down time during their shifts, during which they were completely relieved of duties.  Plaintiffs contend they worked longer than their shifts.  Even if Plaintiffs establish liability, the factual disputes about how much of a shift was compensable could reduce Plaintiffs' damages.  As explained above, the Settlement Allocation is based on an assumption that each shift included 12.5 hours of compensable work time.  Given the risks inherent in litigation, this is a very reasonable compromise and the Court should approve the settlement.

-7-

1   The settlement reflects a compromise on all of the disputed issues identified above.

2   Plaintiffs' risk of decertification, entitlement to overtime, and the amount of overtime are all

3   disputed; the settlement reflects compromise on all of these issues.  Accordingly, the Settlement

4   satisfies the *Lynn's Food* standard, and the Court should approve the settlement of the FLSA

5   claims.

6       "It is well-settled law that a cash settlement amounting to only a fraction of the potential

7   recovery will not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civil*

8   *Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982).  As the Ninth Circuit noted in *Officers*

9   *for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some

10  class members feel they deserve but, conversely, more than the defendants feel those individuals

11  are entitled to.  This is precisely the stuff from which negotiated settlements are made."  *Id*.  The

12  Court should approve the Settlement because the payments to Plaintiffs are substantial, and they

13  represent a reasonable compromise of Plaintiffs' FLSA and related state law wage and hour

14  claims.

15      The settlement also reflects compromise in that it avoids the uncertainty of continued

16  litigation.  Even if the Parties obtained judicial resolution on disputed issues, that would take

17  time and resources directed toward litigation.  Generally, "unless the settlement is clearly

18  inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with

19  uncertain results."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D.

20  Cal. 2004).

21      Absent this settlement, payment for Plaintiffs would have been uncertain, and would have

22  taken dramatically longer.  By way of example, a wage and hour case against U.S. Bank, filed in

23  December 2001, resulted in a substantial verdict for the plaintiffs in September 2008, which was

24  reversed almost six years later by the California Supreme Court.  *See Duran v. U.S. Bank, NA*, 59

25  Cal. 4th 1, 14 (2014).

26      This settlement avoids expenditures of resources for all parties and the Court, and

27  provides "significant benefit that [Plaintiffs] would not receive if the case proceeded—certain

28  and prompt relief."  *Barbosa v. Cargill Meat Sol. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013).

The settlement is also reasonable because the proposed release only requires Plaintiffs to release claims they might bring against Baker Hughes relating to their classification as exempt independent contractors. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1126 (E.D. Cal. 2009).

Assuming approval of the requested fees and costs, over $2,190,000 will be distributed to 48 Plaintiffs. (Brome Decl. ¶ 8; Agreement Ex. A.) This is a substantial sum that adequately recognizes Plaintiffs' damages, and compensates them appropriately. The individual allocation amounts are substantial, and favor settlement approval. The Court should approve the Settlement so notice can be distributed to Plaintiffs.

### B.   Proposed Classes Satisfy the Requirements of Rule 23(a)

Where a class action is settled before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton*, 327 F.3d at 952. The court should address the Rule 23(a) requirements: numerosity, commonality, typicality, and adequacy of representation. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citing Fed. R. Civ. P. 23(a)). Here, the state classes satisfy these requirements, and so court approval of the class action settlement is appropriate.

#### 1.   Numerosity

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no absolute numerical threshold; instead, the factor demands "examination of the specific facts of each case." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (citing *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980)). "'[I]mpracticality' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–914 (9th Cir. 1964).

The numerosity requirement is satisfied here because joinder of all members of the proposed Rule 23 classes is impracticable. These workers traveled far from their homes for their jobs—they did not (and do not) necessarily live in just California and Pennsylvania. In fact, the members of the proposed classes live in 12 states. (Brome Decl. ¶ 2.) Even though the groups

are modest (20 individuals with California claims and 16 individuals with Pennsylvania claims) bringing all of these individuals before the Court would be impractical.  *See Hendershot v. Ready to Roll Transportation, Inc.*, 228 Cal.App.4th 1213, 1222–23 (2014) (applying federal standard and reversing trial court's denial of certification for a group of nine workers, and rejecting bright line test that failed to address "the 'ultimate issue ... [of] whether the class is too large to make joinder practicable'").

Further, judicial economy is served by resolving the class claims within this proceeding. Particularly given that the Parties have reached a settlement that provides substantial relief to class members *while preserving their option to opt-out and pursue their claims individually*, judicial economy is favored by certifying the claims for settlement purposes.  Namely, these class members will benefit by receiving a settlement check through a substantial settlement without having to submit a claim form.

Finally, the fact that many class members have modest claims underscores the value of class treatment.  Here, the named plaintiff has the largest potential claim, and therefore the greatest incentive (theoretically) to bring suit, while the class members, with smaller claims, have less incentive to pursue claims on their own.  Certifying the classes for settlement purposes is therefore appropriate.

### 2. Commonality

In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir.1998).  Commonality is typically satisfied where the plaintiffs challenge "a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005).  Whether class members were subject to a given compensation policy, and whether the policy was uniformly applied and unlawful "are common questions of law and fact that satisfy Rule 23(a)(2)." *Ontiveros v. Zamora*, 2014 WL 3057506, at *6 (E.D. Cal. 2014).

-10-

1   Here, the classes are principally bound by the question of whether Defendant improperly

2   classified them as independent contractors and failed to pay required overtime.  This analysis

3   depends on numerous common questions: 1) whether Defendant exerted control over directional

4   drillers classified as independent contractors; 2) whether class members had opportunity to profit

5   from their directional drilling work; 3) whether class members had significant investments in

6   their work; 4) the degree to which Defendant limited class members' use of skill and initiative;

7   5) whether class members' work was integrated into Defendant's regular business; 6) whether

8   class members were paid overtime premiums; 7) whether directional drilling work can be

9   considered an exempt duty; 8) whether payment of a day rate can be considered a salary; 9)

10  whether Defendant's conduct was willful; 10) whether members of the California class were

11  provided meal and rest breaks; 11) whether Defendant reported all required information in wage

12  statements issued to members of the California class; and 12) whether members of the California

13  class received all wages due at the time of termination.

14  The answers to these questions do not depend on individualized analysis, and will drive

15  the outcome for all Class Members.  Accordingly, the commonality requirement is satisfied

16  3.  Typicality

17  "Under the rule's permissive standards, representative claims are 'typical' if they are

18  reasonably coextensive with those of absent class members; they need not be substantially

19  identical." *Hanlon*, 150 F.3d at 1020; *Multi-Ethnic Immigrant Workers Organizing Network v.*

20  *City of Los Angeles*, 246 F.R.D. 621, 631 (C.D. Cal. 2007).  Typicality is satisfied where the

21  class members' claims arise from the same course of events, and class members make similar

22  legal arguments. *Armstrong*, 275 F.3d at 868.

23  Here, the Plaintiff's claims are typical because, like class members, he worked as a

24  directional driller but was classified as an independent contractor and only paid a day rate with

25  no overtime premiums.  Plaintiff worked in both California and Pennsylvania during the relevant

26  time periods, and so advances the same state law claims as the rest of the class: that this

27  classification violated the FLSA and state laws.  Plaintiff's claims are co-extensive with the class

28  members' because Plaintiff and the class members all allege they "were all Defendant's

-11-

1    employees, working under the same pay practices and the same company-wide employment

2    policies." *Barbosa*, 297 F.R.D. at 442.  Their claims are therefore typical.

3         4.   Adequacy

4         The adequacy factor requires: (1) that the proposed representative Plaintiff does not have

5    conflicts of interest with the proposed class; and (2) that Plaintiff and competent counsel will

6    vigorously prosecute the action.  *Hanlon*, 150 F.3d at 1020–21; Fed. R. Civ. P. 23(a)(4).  The

7    named Plaintiff is an adequate representative of the settlement class.  There are no conflicts

8    within the proposed settlement that would pit the named Plaintiff against the class members.

9    Plaintiff is "part of the class and possess[es] the same interest and suffer[s] the same injury as the

10   class members."  *Amchem Products v. Windsor*, 521 U.S. 591, 625–26 (1997).  Moreover, the

11   settlement provides for payment to the named Plaintiff on the same formula as class members,

12   with no incentive award.  *See Ontiveros*, 2014 WL 3057506, at *8 ("incentive awards create the

13   risk of a conflict of interest").

14        Plaintiff and Plaintiffs' counsel satisfy the requirement of vigorous prosecution because

15   competent counsel reached the decision to settle this matter after discovery and mediation with a

16   skilled mediator.  (Brome Decl. ¶ 5.)  The Court may properly conclude "that plaintiff's counsel

17   has vigorously sought to maximize the return on its labor and to vindicate the injuries of the

18   entire class."  *Murillo v. Pac. Gas & Elec.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010).

19        Plaintiffs' counsel is a qualified firm with extensive experience in class action and wage

20   and hour litigation.  The Nichols Kaster firm ("NK") has been in existence for over thirty years,

21   and is focused on advocating for employee and consumer rights.  (Brome Decl. ¶ 12; Ex. 2:

22   Nichols Kaster Firm Resume.)  NK has represented thousands of employees in hundreds of

23   cases.  (*Id.*)  Nichols Kaster has particularly valuable experience representing workers in the oil

24   and gas industry.  (*Id.*)  The Representative Plaintiffs and Class Counsel satisfy the adequacy

25   requirement of Rule 23.

26   **C.    The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)**

27        In addition to satisfying the Rule 23(a) requirements, the proposed classes "must also

28   meet at least one of the requirements of Rule 23(b)."  *Barbosa*, 297 F.R.D. at 443.  The Rule

-12-

1   23(b) requirements, known as predominance and superiority, focus on the relationship between

2   the common and individual issues. "When common questions present a significant aspect of the

3   case and they can be resolved for all members of the class in a single adjudication, there is clear

4   justification for handling the dispute on a representative rather than on an individual basis."

5   *Gutierrez v. Kovacevich "5" Farms*, 2004 WL 3745224, at *9 (E.D. Cal. 2004) (*citing Local*

6   *Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152,

7   1162 (9th Cir. 2001)). Here, as noted above, one common issue binds the proposed class—

8   whether Defendant improperly classified them as independent contractors and failed to pay

9   required overtime. The independent contractor classification issue drove the filing of this case

10   and forms the basis of this settlement. It is a significant aspect of the case sufficient to find that

11   common issues predominate over individual issues, and supports certification of the settlement

12   classes.

13       Likewise, class-wide relief is a superior method of adjudicating this controversy. "Where

14   class-wide litigation of common issues will reduce litigation costs and promote greater

15   efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-*

16   *Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996). In considering whether a class action is

17   superior, the court must focus on whether the interests of "efficiency and economy" would be

18   advanced by class treatment. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th

19   Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001). Where, as here, a class settlement

20   provides compensation to a group, whose individual damages are modest, the superiority

21   requirement is satisfied. *Barbosa*, 297 F.R.D. at 445. This settlement provides significant

22   monetary relief for Plaintiffs and putative class members. It would be inefficient and

23   uneconomical, as well as a supreme injustice to class members, to abandon this settlement and

24   force class members to litigate their nearly identical cases individually.

25       **D.      The Proposed Settlement is Fundamentally Fair, Adequate, and Reasonable**

26       While the final analysis of whether the proposed settlement is fair, reasonable, and

27   adequate is typically made after a hearing, Fed. R. Civ. P. 23(e)(1)(c), Plaintiffs provide the

28   Court with an initial assessment of these factors in order to facilitate the approval process. The

-13-

1  Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a
2  settlement requires this Court to balance several factors: the strength of plaintiffs' case; the risk,
3  expense, complexity, and likely duration of further litigation; the risk of maintaining class action
4  status throughout the trial; the amount offered in settlement; the extent of discovery completed,
5  and the stage of the proceedings; the experience and views of counsel; the presence of a
6  governmental participant; and the reaction of the class members to the proposed settlement.
7  *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  *See also*
8  *Hanlon*, 150 F.3d at 1026.  As outlined below, these factors support preliminary approval of the
9  settlement.

10           1.   The strengths of Plaintiffs' case

11           As explained above, Plaintiffs contend that under the "economic realities" test, Plaintiffs
12  were employees, and not of in business for themselves.  Plaintiffs contend Defendants exercised
13  sufficient control over their work that they will be found to be Baker Hughes' employees.  *See*
14  *Alexander v. FedEx Ground Package System*, 765 F.3d 981, 988–89 (9th Cir. 2014).
15  Additionally, Plaintiffs argue that because they were paid a day rate only, none of the FLSA
16  exemptions, which require payment of a salary, can apply.  *Keen*, 2016 WL 3253895, at *5 (a
17  day rate "is not pay on a salary basis as is required to maintain the . . . exemption.").

18           Defendant, on the other hand, has asserted that it legitimately contracted with third-party
19  labor providers who supplied directional drillers, and these workers were properly classified as
20  independent contractors.  Defendant argues that even if Plaintiffs were employees, they were
21  exempt from overtime under the administrative, executive, combination, or highly compensated
22  exemptions.  Finally, Defendant disputes Plaintiffs' hours worked, and contends that Plaintiffs
23  had substantial amounts of down time during their shifts, during which they were completely
24  relieved of duties.

25           Liability is far from certain.  Even if Plaintiffs establish liability, Defendants' defenses
26  and arguments about hours worked could greatly reduce Plaintiffs' damages.  Given the risks
27  inherent in litigation, both on the merits and damages, the Court should approve the settlement.

28           2.   The risk, expense, complexity, and duration of further litigation

-14-

This case has been litigated efficiently, with both Parties cognizant that full-blown litigation would be costly and protracted.   While Defendant stipulated to conditional certification, it would have sought decertification of the collective and would have vigorously opposed class certification.   Without this settlement, the Parties would face contested class certification, decertification, and summary judgment motions.   This would require additional discovery.  Because the independent contractor analysis is fact-intensive, it is very possible the case would not be resolved on summary judgment, meaning Defendant's classification would be resolved at trial.  Wage and hour trials are complex, expensive, and unpredictable.  If Plaintiffs were to prevail on liability, Defendant would likely appeal.  Accordingly, there is no quick and easy route to payment for Class Members absent this settlement.  This factor therefore supports approval of the settlement.

### 3.   The risk of maintaining class action status through trial

As noted in section III.B, *supra*, the Parties agree that this case is appropriate for settlement on a class-wide basis.  However, Plaintiffs have not yet moved for class certification, and Defendant would have opposed Rule 23 certification.  This settlement provides substantial relief to class members which could otherwise be unavailable.  The Court should approve the settlement.

### 4.   The amount offered in settlement

The settlement amount, $3,000,000, will bring substantial relief to the class members. Settlement payments range from $220.28, for an employee who worked only one covered week, up to $243,473.62 for the Named Plaintiff (who worked for three years).  (Brome Decl. ¶ 9; Agreement Ex. A.)   Three others would receive over $100,000, thirteen would receive over $50,000; the average settlement payment, <u>after</u> attorneys' fees and costs, will be $45,625. (Brome Decl. ¶ 9; Agreement Ex. A.)

The settlement allocation reflects a very good result compared to possible results in litigation.   The settlement allocation is fair and reasonable, because it is based on individual earnings and days worked, meaning it gives the greatest payment to workers with the largest potential claims.  Specifically, Class Counsel calculated damages for all class members based on

-15-

1    Defendant's records, using individualized days worked and pay rates.  Plaintiffs were typically

2    scheduled to work 12 hour shifts, but the Settlement assumes reflects a shift of 12.5 hours.

3    Given that Defendant argued that shifts typically included non-compensable downtime, this is a

4    very good result.

5        Importantly, Class Counsel reviewed and analyzed payroll data for all Rule 23 Class

6    Members and FLSA Opt-Ins prior to mediation.  (Brome Decl. ¶ 4.)  Armed with this data, Class

7    Counsel was able to analyze potential damages in conjunction with the risk of loss to Class

8    Members.  Assuming the Court approves Class Counsel's request of 25% of the settlement fund

9    for fees plus costs, the Settlement will distribute approximately $2,190,000 to participating class

10   members.  This is a substantial sum that adequately recognizes Class Members' damages, and

11   compensates them appropriately.  The settlement distributes—after fees and costs—at least 92%

12   of a realistic value of the case to Accepting Plaintiffs, which strongly supports approval.

13       5.   The extent of discovery completed and the stage of proceedings

14       As described above, the Parties have engaged in discovery and depositions, and

15   Defendants provided with substantial data regarding class members' work and pay history.  This

16   data was used to calculate damages for all directional drillers, not just the FLSA Opt-ins.  The

17   parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to

18   weigh the strengths and weaknesses of the case, and with all the data necessary to calculate

19   damages.   This amount of discovery supports the finding that the Settlement is fair and

20   reasonable.

21       6.   The experienced views of counsel

22       Class Counsel's experience is outlined *supra* in section IV.B.4.  As noted there, Class

23   Counsel have extensive experience in nationwide wage and hour litigation.  Counsel for all

24   parties agrees that the settlement is fundamentally fair, adequate, and reasonable.   This

25   settlement agreement is the result of arms-length negotiations, between experienced counsel

26   representing the interests of the Plaintiffs and Defendant, facilitated by a skilled mediator, after

27   thorough factual and legal investigation.

28       7.   The views of class members

-16-

1    This factor is best addressed following the distribution of the Notice, once the Class

2    Members have received information about the settlement.

3        **E.    The Court Should Approve the Requested Notice Forms**

4        The Court must also direct "the best notice that is practicable under the circumstances."

5    Fed. R. Civ. P. 23(c)(2).   Here, the Settlement Agreement provides for the settlement

6    administrator to mail notice to all potential class members.  (Agreement § 5, Exs. B, C, D.)  The

7    Agreement also provides that, if a notice is returned, the Settlement Administrator will perform a

8    skip trace and take any other reasonable steps ensure the notice is received.  (Agreement § 5.)

9    This procedure has been found to satisfy the Rule 23 notice requirements.  *Ontiveros*, 2014 WL

10   3057506, at *11.   The notice forms "clearly identif[y] the options available to putative class

11   members . . . and comprehensively explain the nature and mechanics of the settlement."  *Id.*

12   Accordingly, Plaintiffs request that the Court approve the notice distribution procedures and the

13   forms provided with the Settlement Agreement.

14       **F.    The Court Should Approve the Requested Attorneys' Fees on a Later Motion**

15       In the Ninth Circuit, the typical range of attorneys' fee awards from a common fund

16   recovery is 20 to 33.3 percent, with 25 percent considered the benchmark.  *Powers v. Eichen*,

17   229 F.3d 1249, 1256 (9th Cir. 2000).   "[I]n most common fund cases, the award exceeds that

18   benchmark."  *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D.

19   Cal. Feb. 2, 2009).  Courts in this district routinely approve fee awards in common fund cases at

20   or above 30%.  *Barbosa*, 297 F.R.D. at 450 (approving fee award of 33%, and collecting nine

21   recent wage and hour cases approving fee awards of 30-33.3%).

22       Plaintiffs will provide detailed briefing on their request for attorneys' fees in a separate

23   motion. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010).

24   Here, Class Counsel seeks attorneys' fees from the common fund at the benchmark amount of

25   25%, pursuant to the Parties' Settlement Agreement.  Given that Class Counsel seeks a modest

26   fee award, Plaintiffs respectfully request that the court defer a detailed attorneys' fee analysis

27   until the motion for attorneys' fees that will follow.  This is appropriate since the factors

28   considered in assessing whether the fee award is fair and reasonable (the results obtained, the

-17-

risk of litigation, the skill required, the quality of the work performed, the contingent nature of the fee, and awards in similar cases) partially depend on Class Members' responses to the notice of settlement.  Plaintiffs' Counsel provides a summary of this analysis to facilitate approval.

### 1.   The Percentage-of-the-Benefit Method Is Warranted in this Case.

The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016).  In group litigation, many class members benefit from the ultimate settlement, but they may not have played a large role in the litigation that led to the payment.  *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common fund approach "thus spread[s] fees proportionately among those benefited by the suit." *Id.*  Awarding a percentage of the total fund is routinely approved as a fair way to calculate a reasonable fee when contingency fee litigation has produced a common fund.  *See*, *e.g.*, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002).

Trial courts have the discretion to conduct a lodestar cross-check on a percentage fee, but also retain the discretion to forego a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee.  *Laffitte*, 1 Cal. 5th at 506; *see also Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 30 (2000).  A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.  *See, e.g., Glass v. UBS Financial Services, Inc.,* 2007 WL 221862 at *16 (N.D. Cal.2007); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008).

### 2.   The Percentage Requested by Class Counsel is Fair and Reasonable.

While the Ninth Circuit endorsed a benchmark of 25 percent, *Powers*, 229 F.3d at 1256, the actual percentage of fees awarded varies depending on the facts of each case, and most common fund cases make an award that exceeds the 25 percent benchmark.  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010); *Knight*, 2009 WL 248367 at *3. Courts within this district regularly award common fund attorneys' fees above the 25%

-18-

benchmark in wage and hour cases.[7]

Courts consider several factors to determine whether to depart from this benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, at *16 (E.D. Cal. Nov. 27, 2012); *Six Mexican Workers v. Az. Citrus Growers,* 904 F.2d 1301 (9th Cir.1990).

Here, these factors support an award of fees at the 25% benchmark.

### a.    The Result Obtained for the Class and Similar Awards

The result obtained for the class is a significant factor to be considered by the Court in making a fee award. *Bautista v. Harvest Mgt. Sub LLC*, 2014 WL 12579822, at *12 (C.D. Cal. July 14, 2014); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained").

Even a limited comparison to other actions for unpaid overtime highlights the success achieved here. *See, e.g.*, *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D. Cal. 2012) (approving fees of 29% of common fund, where settlement resulting in average payments of $2,000 to each class member in $4,000,000 settlement was favorable but in "no way remarkable or extraordinary"); *Barbosa*, 297 F.R.D. at 450 (court deemed recovery of

---

[7] *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. Oct.31, 2012) (33 percent of the common fund); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879 (E.D. Cal. June 30, 2011) (30 percent of the common fund); *Vasquez v. Coast Valley Roofing,* 266 F.R.D. 482 (E.D. Cal.2010) (33.3 percent of the common fund); *Benitez v. Wilbur*, No. 1:08–cv–01122 LJO GSA, Doc. No. 52 (E.D. Cal., Dec. 15, 2009) (awarding 33.3 percent of the benefit to the class in attorneys' fees); *Chavez v. Petrissans,* (Case No. 1:08–cv–00122 LJO GSA, Doc. No. 89 (E.D. Cal. Dec. 15, 2009) (court approved awards of attorneys' fees of 33.3 percent of the common fund); *Romero v. Producers Dairy Foods, Inc.,* No. 1:05–cv–0484–DLB, 2007 WL 3492841, at * 4 (E.D. Cal. Nov.14, 2007) (class-action settlement where court approved attorneys' fees in the amount of 33 percent of common fund); *Vasquez v. Jim Aartman, Inc.,* No. 1:02–cv–05624–AWI–LJO, Doc. No. 130 (class-action settlement where court approved attorneys' fees in the amount of 30 percent of the settlement amount); *Baganha v. Cal. Milk Transport,* No. 1:01–cv–05729–AWI–LJO, Doc. No. 147 (class-action settlement where court approved attorneys' fees in the amount of 31.25 percent of settlement amount); and *Randall Willis et al. v. Cal. Western Transport* and *Earl Baron et al. v. Cal Western Transport* (consolidated cases), No. 1:00–cv–05695–AWI–LJO (court approved attorneys' fees in the amount of 33.3 percent of the settlement amount).

$1,290,000 for 1,837 employees "a favorable result" and awarded 33% as fees of common fund); *Bautista*, 2014 WL 12579822, at *12 ("In light of the substantial result achieved by class counsel for the Settlement Classes, the court finds that the requested fee award of 30% is fair and reasonable.").

Here, the Settlement will distribute more than the value of Plaintiffs' overtime wage loss, with an average payout of over $45,000. This easily supports a fee award at the benchmark percent.

### b.   Class Counsel's Experience and Skill Required and Complexity of Issues

Courts typically consider the size and difficulty of the issues in a case in making a fee award. *Bautista*, 2014 WL 12579822, at *12. Here, the case involved overlapping issues of independent contractor misclassification and overtime exemptions under state and federal law, and facts particular to the oil industry. Counsel's experience in vigorously litigating class/collective wage and hour actions, plus their experience with this industry were essential in obtaining this favorable and efficient result. Counsel litigated the case efficiently, negotiating an agreement with Defendants to stipulate to conditional certification, and taking sufficient discovery to position the case for favorable settlement without delaying resolution on drawn out litigation. These factors favor approval. *See Adoma*, 913 F. Supp. 2d at 983 ("[T]he court believes that an award of 29% of the common fund . . . is appropriate. It is important that labor and employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts.").

### c.   Risk of Litigation and Contingent Fees

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." *Bautista*, 2014 WL 12579822, at *13. The contingent nature of the work performed by class counsel and the risk taken in advancing costs, also weigh in favor of determining a higher percentage fee. *See Graham v. Daimler Chrysler Corp.*, 34 Cal. 4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee

-20-

compensates the lawyer not only for the legal services he renders but for the loan of those services.").

Plaintiffs' counsel handled this case on a contingency basis.   (Brome Decl. ¶ 12.) Plaintiffs' Counsel did not receive any payment for their time spent litigating the case, nor did they receive reimbursement for their out of pocket costs during the litigation.   (*Id.*)   Plaintiffs' Counsel alone undertook the financial risk of unsuccessful litigation.   (*Id.*)   This factor favors approval.

### d.      Reaction of the Class

This factor is best addressed following the distribution of the Notice, once the Class Members have had an opportunity to review and join the settlement.

### G.      The Court Should Approve Costs of up to $20,000

Plaintiffs' Counsel also requests approval of up to $20,000 in costs.   Payment of these costs is already factored into the allocation. Plaintiffs' Counsel has already incurred $15,857.64 in unreimbursed costs during this litigation, which it advanced on behalf of Plaintiffs.   (Brome Decl. ¶ 13, Ex. 3: cost report.)   Plaintiffs' Counsel will incur additional costs in finalizing the settlement (for example, attending a hearing on this motion and the final approval hearing). Plaintiffs' Counsel will provide details of these costs in subsequent briefing.   Plaintiffs' Counsel therefore requests, and Defendant does not oppose, reimbursement of up to $20,000 in costs.   To the extent total costs are less than $20,000, any unexpended costs will be included in the settlement allocations for Accepting Plaintiffs.   This amount is also appropriate because Plaintiffs' Counsel's private agreements with their clients (the Opt-in Plaintiffs) provide for reimbursements of litigation costs in addition to payment of attorneys' fees. (Brome Decl. ¶ 13.) The Court should approve reimbursement of costs.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval and order distribution of notice, so Plaintiffs may learn about the Settlement and decide whether to participate.

1    DATED:  April 10, 2017.                    NICHOLS KASTER, LLP

2

3                                               By: s/ Daniel S. Brome
                                                    MICHELE R. FISHER
4                                                   DANIEL S. BROME
                                                    Attorneys for Plaintiff and the Putative Class
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY SETTLEMENT APPROVAL          CASE NO. 16-CV-00157-DAD