UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC MCCULLOCH, et al.,<br><br>Plaintiff,<br><br>v.<br><br>BAKER HUGHES INTEQ DRILLING FLUIDS, INC., et al.,<br><br>Defendants. | No. 1:16-cv-00157-DAD-JLT<br><br>ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>(Doc. No. 49) |

This matter is before the court on plaintiffs' unopposed motion for preliminary approval of class action settlement and certification of the settlement class. (Doc. No. 49.) Oral argument was heard on May 16, 2017. Attorney Daniel S. Brome appeared on behalf of plaintiffs. Attorney Michael Brett Burns appeared on behalf of defendants. At the conclusion of the hearing, the matter was taken under submission. For the reasons set forth below, the court will grant plaintiffs' motion.

**BACKGROUND**

The complaint in this action was filed on February 3, 2016, alleging violations of the Fair Labor Standards Act ("FLSA"), California Labor Code, California Business and Professions Code, and the Pennsylvania Minimum Wage Act. (Doc. No. 1.) This court has jurisdiction over the case because it arises under the laws of the United States. *See* 28 U.S.C. § 1331.

1

Named plaintiff McCulloch and those similarly situated worked for Baker Hughes Inteq Drilling Fluids, Inc. ("Inteq") and Baker Hughes Inc., ("Baker Hughes") (collectively "defendants") as directional drillers for the applicable statutory period. (Doc. No. 1 at 7.) Defendants employed plaintiffs as independent contractors, or consultants, who were referred by and paid through third party contracting companies. (Doc. No. 49 at 9.) Plaintiffs allege that their duties as independent contractors were similar to that of employees hired by defendants, but that they were paid with a day rate without overtime. (*Id.*) As such, plaintiffs contend that they were improperly classified as independent contractors and are entitled to "unpaid overtime under the FLSA and California and Pennsylvania laws." (*Id.*) Under California law, plaintiffs have also asserted claims for "meal and rest period premiums, wage statement penalties, and waiting time penalties." (*Id.* at 10.) For purposes of class settlement, the parties have agreed to define the classes as follows:

> California Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in California at any time since February 2, 2012 to April 10, 2017, and who do not communicate a timely written request for exclusion from the Settlement.
>
> Pennsylvania Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in Pennsylvania at any time since February 2, 2013 to April 10, 2017 and who do not communicate a timely written request for exclusion from the Settlement.

(Doc. No. 50 at 5–6.)

On August 26, 2016, the parties filed a stipulation for conditional certification under the FLSA that was granted on October 4, 2016. (Doc. No. 26.) The court conditionally certified a class consisting of the following:

> All persons who provided services as consultant directional drillers, and in other independent contractor directional driller positions with similar job titles and/or job duties to Baker Hughes, at any time from three years prior to the filing of this action.

(*Id.* at 2.) The court also provided that defendants may seek decertification at a later time as recognized in the stipulation. (*Id.*) Thereafter, "twenty-four individuals filed consent forms to assert FLSA claims," otherwise known as the "FLSA Opt-ins." (Doc. No. 49 at 10.) Plaintiffs'

counsel has interviewed the FLSA Opt-ins to ensure their claims fall within the purview of plaintiffs' allegations in this action. (*Id.* at 10.) The class currently consists of forty-eight individuals. (*Id.* at 9.)

The parties further agreed to mediation and limited discovery as part of the stipulation. Defendants have deposed the named plaintiff, Marc McCulloch, and the parties have exchanged thousands of pages of documents. (*Id.* at 10.) Mediation was held on March 3, 2017 in San Francisco with Michael Loeb of JAMS. The parties signed a final settlement agreement on April 7, 2017. (*Id.*) Plaintiffs filed this unopposed motion for preliminary approval of that settlement on April 10, 2017. (Doc. No. 49.)

The settlement structure is as follows: "following preliminary approval, notice will be distributed and all Opt-in plaintiffs who accept their offer, and all Rule 23 Class Members who do not opt-out of the settlement (collectively 'Accepting Plaintiffs'), will receive their allocation following final approval." (*Id.*) The settlement amount is set at $3,000,000 which includes attorneys' fees and costs as well as one-half of the employer's share of applicable payroll taxes. (*Id.*) The settlement amount is non-reversionary, such that in the event a Rule 23 Class Member opts out of the settlement, the amount originally reserved for those individuals will instead be re-distributed among the participating plaintiffs. (*Id.* at 12.) Finally, the release is limited to the claims brought forth in this action. (*Id.*)

**LEGAL STANDARD**

Rule 23 mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The following procedures apply to the court's review of such a proposed settlement:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .

> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) of the Federal Rules of Civil Procedure request that the court approve all class action settlements "only after a hearing on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for breach of a fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Bluetooth*, 654 F.3d at 946.

When parties seek class certification for settlement purposes only, Rule 23 "demand[s] undiluted, even heightened attention" to the requirements for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Although in this case the parties do not dispute that the class exists for the purposes of settlement, the court must nonetheless examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. 2014); *West v. Circle K Stores, Inc.*, No. 04-cv-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers preliminary class certification. *Id.* Second, if the court makes a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to

4

approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, Inc.*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

In light of the pending motion, the court will turn to the first stage in the analysis and will conduct a preliminary fairness evaluation.

**ANALYSIS**

**I. Preliminary Evaluation of Fairness of a Proposed Class Action Settlement**

First, the court must conduct a preliminary fairness evaluation of the proposed class action settlement, pursuant to Rule 23(e). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the stage of the proceedings; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court should also watch for collusion between class counsel and defendant. *Id.* A preliminary fairness determination is appropriate "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

A. Negotiations

The settlement here has been procured by serious, substantial, and arms-length negotiations. "Courts are less likely to find collusion when a settlement agreement was preceded by a significant period of litigation or negotiations were conducted by a third-party mediator." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023-RAL, 2016 WL 96156, at *6 (D.S.D. Jan. 8, 2016). While there has not been a lengthy period of adversarial litigation involving substantial discovery in this case, the court notes that the parties have engaged in limited but significant discovery directed towards early resolution prior to mediation. (Doc. No. 49-1 at 2, ¶ 4.) The parties exchanged tens of thousands of pages of documents, and named plaintiff McCulloch participated in a partial Rule 30(b)(6) deposition in addition to being deposed by defendant. (*Id.*)

In any event, denying preliminary approval because of minimal discovery is not appropriate "absent some evidence of actual collusion in negotiating the settlement . . . ." *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 28 (D.D.C. 2011). While the general risk in coming to a settlement too early is that its value is not properly assessed, plaintiffs' counsel has explained that here the value has been calculated based on the following:

> (1) each individual's day rate, as determined from defendants' invoices; (2) each individual's actual days worked, as determined based on data produced by defendants; (3) each individual's unique consent form filing date applying a three-year statute of limitations; (4) a reasonable assumption that each shift worked included 12.5 hours of compensable work time; (5) an assumption of 100% chance of success on the overtime claims under state and federal law; (6) overtime paid at .5 times the regular rate for all hours worked over 40 in a workweek (and over 8 hours in a day under California law, plus double-time over 12 hours in a day); and (7) an assumption of a 50% risk of loss on derivative California claims (meal and rest periods, wage statement, and waiting time penalties).

(*Id.* at 2–3, ¶ 6.)

The total damages, including wage loss calculated as explained above and non-wage claims, absent attorneys' fees and costs, comes to $2,386,078.13. (*Id.* at 3, ¶ 7.) At oral argument on the pending motion, plaintiffs' counsel represented that prior to mediation, the parties conferred to discuss their respective theories of the case and calculations for damages models. The parties efficiently mediated with Michael Loebs of JAMS on March 3, 2017 in San Francisco. (*Id.* at 2, ¶ 5.) The parties signed a final settlement agreement on April 7, 2017. (*Id.*) Based on the foregoing, the court does not find any evidence of collusion and concludes that "the process by which the parties reached their settlement weighs in favor of preliminary approval." *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016).

B. Deficiencies

A proposed settlement does not meet the test for preliminary fairness if there are any obvious deficiencies in the proposed agreement. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. Here, the settlement amount is set at $3,000,000 and includes payment to all Class Members, attorneys' fees and costs, and "one-half of the share of applicable payroll taxes." (Doc.

No. 49 at 10.) All Rule 23 Class Members fall within the scope of the settlement. (*Id.* at 11.) Rust Consulting, Inc. has been named as the Claims Administrator and "will issue IRS forms and distribute settlement payments out of a qualified settlement fund." (*Id.*) The settlement amount is non-reversionary, such that the amount allocated to any individuals opting out of the settlement will be re-distributed among participating plaintiffs and will not revert back to defendants. (*Id.* at 12.) Moreover, the release is limited to the claims and allegations set forth in this action such that the FLSA Opt-ins will be foregoing their FLSA claims and the Rule 23 Class Members will be foregoing their state law claims. (*Id.*) The court does not find any obvious deficiencies with this proposed settlement as it stands.

### C. Preferential Treatment

For a proposed settlement to pass a preliminary fairness determination, it must not provide preferential treatment to certain members of the class or the named plaintiffs. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. The court does not find that this settlement agreement provides preferential treatment to any one class member. The named plaintiff has not been offered, nor does counsel intend to offer, an incentive award since the named plaintiff's damages are anticipated to be the largest among the class members based on the number of years worked in his capacity as a consultant directional driller. (Doc. No. 49 at 20.) Accordingly, below the court turns to the provisions concerning attorneys' fees and other administrative costs.

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Plaintiffs' counsel represents that detailed briefing in support of their request for attorneys' fees will be provided through a separate motion and that the court should rule on the

issue of attorneys' fees at a later time. (Doc. No. 49 at 25.) Particularly, plaintiffs' counsel assert that ruling on attorneys' fees on a later motion is appropriate because the factors considered in determining whether the fee award is appropriate depend on the responses to the notice of settlement. (*Id.* at 25–26.) However, plaintiffs' counsel has also provided the court at this time with a "summary of this analysis to facilitate approval." (*Id.* at 26.) The court will review this analysis now for purposes of determining fairness of the settlement.

Here, counsel seeks attorneys' fees at the benchmark amount of 25% amounting to $750,000 of the settlement award. (Doc. No. 50 at 10.) While the court intends to rule on the issue of attorneys' fees upon counsel's filing of a subsequent motion, it finds the fee award anticipated to be sought to be reasonable under the circumstances. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). Additionally, the court finds the proposed reimbursement of $20,000 incurred in costs to be reasonable as well. *See Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 117789, at *7 (E.D. Cal. Jan. 11, 2017) (finding administrative costs of $45,000 for a $4.5 million settlement a reasonable amount). Plaintiffs' counsel also represents that "any unexpended costs will be included in the settlement allocations for accepting plaintiffs." (Doc. No. 49 at 29.) Accordingly, the court finds that the costs and proposed payment to class counsel does not undermine a preliminary determination that this settlement is a fair one.

D. Range of Possible Approval

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair." *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

8

expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, after deducting attorneys' fees, the total settlement amount is $2,190,000 distributed among forty-eight individuals, averaging at $45,625 per person. (Doc. No. 49 at 12.) This amount ranges from $220.28 to at least one plaintiff for one week of wage and non-wage losses and up to $243,473.62 for the named plaintiff who worked three years and eight months. (*Id.* at 13.) It should be noted that defendant no longer classifies directional drillers as independent contractors and now treats all directional drillers as employees. (*Id.* at 13–14.)

Plaintiffs contend that the settlement is substantively fair because had further litigation been pursued, defendants would have sought to decertify the class as provided in the stipulation for conditional certification. (*Id.* at 14.) Additionally, plaintiffs assert that under the "economic realities" test, they should have been classified as employees because they were not in business for themselves. (*Id.*) However, plaintiffs concede that defendants' argument that at least some plaintiffs were senior directional drillers who earned more than $1,000 and had the option of working as employees, but chose instead to be treated as independent contractors, has some emotional appeal. (*Id.* at 15.) Accordingly, plaintiffs believe that the settlement reflects a fair compromise of the parties' claims. While the parties agree that the scheduled shifts were twelve hours, they disagree about the actual hours worked. (*Id.*) Even if defendants are found liable for violations of state and federal law, the total amount of damages recovered are affected by how much of the shift was compensable. (*Id.*) Here, according to plaintiffs, the settlement reflects a fair compromise because the allocation is based on the assumption that each shift comprised of twelve and a half hours of compensable work. (*Id.*) The amount allocated to each plaintiff is also based on individual earnings and the total number of days worked, essentially granting "payment to workers with the largest potential claims." (*Id.* at 23.) Plaintiffs explain that the case would likely not be resolved on summary judgment since the independent contractor analysis is a fact-intensive inquiry and classification would have to be resolved at trial. (*Id.* at 23.) Finally, plaintiffs point out that approval of the settlement would avoid the expenditure of costs for all parties and the court.

After assessing the terms of the proposed settlement and comparing it to the potential rewards of continued litigation, the court finds that the settlement agreement reflects a fair compromise between the parties because the payments stemming therefrom are substantial and compensate plaintiffs appropriately.

**II. Preliminary Certification of the Settlement Class**

In order to preliminarily certify a class, the court must find that all of the requirements of Rule 23(a) are met. *See Hanlon*, 150 F.3d at 1019. As a threshold matter, in order to certify a class, a court must be satisfied that:

> (1) the class is so numerous that joinder of all members is impracticable (the "numerosity" requirement); (2) there are questions of law or fact common to the class (the "commonality" requirement); (3) the claims or defenses of representative parties are typical of the claims or defenses of the class (the "typicality" requirement); and (4) the representative parties will fairly and adequately protect the interests of the class (the "adequacy of representation" requirement).

*In re Intel Securities Litigation*, 89 F.R.D. 104, 112 (N.D. Cal. 1981) (citing Fed. R. Civ. P. 23(a)).

Once each of these threshold requirements set out under Rule 23(a) is satisfied, a class may be certified if the class action satisfies the predominance and superiority requirements of Rule 23(b)(3). *See Amchem*, 521 U.S. at 615 ("To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'") First, the common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof of the common questions that "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear

1 | justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As one district court has summarized:

> In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context.

*Palacios v. Penny Newman Grain, Inc,*, No. 1:14-cv-01804-KJM, 2015 WL 40781235, at *6 (E.D. Cal. July 2, 2015) (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

    A. <u>Rule 23(a)</u>

        1. *Numerosity*

Rule 23 requires a class to be so numerous that joinder of all members individually is "impracticable." Fed. R. Civ. P. 23(a). This "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. Oct. 8, 2015) (quoting *In re Intel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)). *See also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 588 (C.D. Cal. 2008). A plaintiff seeking class certification is not required to show that the number of potential class members exceeds an established threshold. *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980). A potential class consisting of at least forty members will generally be treated as satisfying the numerosity requirement. *See Odgen v. Bumble Bee Foods, LLC*, 292 F.R.D. 620, 624 (N.D. Cal. 2013); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises forty or more members.").

/////

Here, plaintiffs seek certification of the state classes. Plaintiffs concede that while the class for each is modest, with twenty-six individuals alleging violations of California law and sixteen individuals alleging violations of Pennsylvania law, joinder here would be impracticable given that the members of the proposed class live in twelve different states. (Doc. No. 49 at 17.) While the state classes consist of just over forty members, the court reiterates that the number of class members need not meet an established threshold. Here, the court finds that numerosity has been satisfied since the claims of the putative class are smaller than that of the named plaintiff, further incentivizing the need for certification.

    2. *Commonality*

Rule 23 requires there to be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)'s commonality requirement, a class claim "must depend upon a common contention . . . of such a nature that is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. As the Supreme Court has further explained, this frequently necessitates an inquiry that "overlap[s] with the merits of plaintiff's underlying claim." *Id.* at 351.

The common contention central to class-wide resolution, here, is whether defendants "improperly classified [the class] as independent contractors and failed to pay required overtime." Further, defendants contend there are a number of questions of law and fact that are common to the class:

> (1) whether defendant exerted control over directional drillers classified as independent contractors; (2) whether class members had opportunity to profit from their directional drilling work; (3) whether class members had significant investments in their work; (4) the degree to which defendant limited class members' use of skill and initiative; (5) whether class members' work was integrated into defendants' regular business; (6) whether class members were paid overtime premiums; (7) whether directional drilling work can be considered an exempt duty; (8) whether payment of a day rate can be considered a salary; (9) whether defendants' conduct was willful; (10) whether members of the California class were provided meal and rest breaks; (11) whether defendant reported all required information in wage statements issued to members of the California class; and (12) whether members of the California class received all wages due at the time of termination.

12

(Doc. No. 49 at 19.)

Although these inquiries may involve some degree of individual analysis, the court nonetheless concludes that they indeed pose common questions of law and fact. Accordingly, the court finds that the commonality requirement has been satisfied.

### 3. *Typicality*

Typicality is satisfied if the representative's claims arise from the same course of conduct as the class claims and are based on the same legal theory. *See, e.g.*, *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). Under the rule's "permissive standards," representative claims are typical if they are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

The court finds that here the named plaintiff's claims are typical of the class. Similar to other class members, named plaintiff McCulloch worked as a directional driller for defendants and was classified as an independent contractor. (*Id.* at 19.) Plaintiff McCulloch was paid at a day rate without overtime. (*Id.*) In addition, he worked in both California and Pennsylvania and is, therefore, able to bring claims under the laws of both states and allege violations of the FLSA. (*Id.*) Accordingly, typicality is satisfied because named plaintiff McCulloch's claims are co-extensive with the other class members.

### 4. *Adequacy of Representation*

Adequacy of representation is met if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has noted that two criteria for determining this have been recognized: "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Plaintiff McCulloch's posture as the proposed representative certainly does not present any apparent conflicts of interest. As demonstrated through the commonality and typicality

13

requirements, plaintiff McCulloch suffers the same injury and shares the same interest as the putative class members. (*Id.* at 20.) Notably, named plaintiff McCulloch has not been offered an incentive award and will be paid on the same formula as the other class members. (*Id.*) Under some circumstances, incentive awards have been recognized as posing the risk of "undermin[ing] the adequacy of the class representatives." *Radcliff v. Experian Info. Solis Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citing *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). Since no incentive award is part of this settlement, no such risk is present here.

Furthermore, the court finds that plaintiffs' counsel has demonstrated a commitment to vigorously prosecute this action. Plaintiffs' counsel, Nicholas Kaster, PLLP, was able to reach a settlement in this matter after conducting discovery and engaging in mediation. (*Id.*) This case's early resolution can partly be attributed to counsel's experience representing thousands of employees in wage and hour cases for thirty years, particularly within the oil and gas industry. (*Id.*) Given the absence of any conflicts of interest and counsel's competent and vigorous representation, the court finds that the adequate representation requirement is met.

B. Rule 23(b)(3)

Aside from the aforementioned prerequisites to class certification, certification must also meet one of the three requirements of Rule 23(b)(3). This provision requires the court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Again, while this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. Predominance is essentially "an assessment of 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009)).

As plaintiffs assert, the common contention that predominates here is whether defendants improperly classified the putative class as independent contractors and failed to pay overtime

14

premiums. As plaintiffs have explained, "[t]he independent contractor classification issue drove the filing of this case and forms the basis of this settlement." (Doc. No. 49 at 21.) The court agrees and concludes that as a result, common issues clearly predominate over individual ones.

While predominance is one of its requirements, Rule 23(b)(3) also requires that class-wide resolution to be the superior method of adjudication. Here, the court does not find that any one class member has an interest in individually controlling the action, especially provided that the named plaintiff has not been offered an incentive award. (*Id.* at 20.) Moreover, the court is not aware of any other litigation related to the instant controversy. Class-wide relief appears to be the superior method of adjudication given that the claims for many of the class members are relatively modest and individually filing suit would not serve the interests of judicial economy. *See, e.g.*, *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013) (finding that, "[t]he potential recovery by any individual plaintiff is relatively small and thus individual members of the class would likely be unwilling or unable to institute separate suits.").

Because the requirements of Rule 23(b)(3) are satisfied here, the court will grant class certification for purposes of settlement.

### III. Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain the following, in plain and easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."
/////

*Churchill Vill., LLC v. General Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the Settlement Administrator will mail the proposed notice form. (Doc. No. 49 at 25.) In the event a notice form is returned, "the Settlement Administrator will perform a skip trace and take any other reasonable steps to ensure the notice is received." (*Id.*) Plaintiffs provide three proposed notice forms. The first is specifically for Opt-in plaintiffs, the second is for Class Members, and the third is for Opt-in plaintiffs and Class Members. (Doc. No. 50 at 25–28; 30–37; 39–50.) In addition to describing the prospective class, each of the notice forms also describe the nature of the action and the claims raised therein, namely that in violation of state and federal wage and hour laws "defendants misclassified these directional drillers as independent contractors, rather than employees, and as a result failed to pay overtime premiums, for overtime hours worked." (*Id.* at 25.) The notice forms describe the options available to the prospective plaintiffs and the effect of electing each option. (*See id.* at 40.) The notice forms also set forth the terms of the settlement, proposed attorneys' fees, and scope of the liability release. (*See id.* at 42–47.) The prospective plaintiffs are advised that they may, but are not required to retain an attorney. (*See id.* at 46.) They are further provided with the means and deadlines for class members to object or be excluded from the class, as well as information about the binding effect of the settlement in the event that they choose to submit the notice form. (*See id.* at 40–41.)

Additionally, plaintiffs propose the following timeline for implementation of the Settlement Agreement following preliminary approval:

- **May 30, 2017 (7 days from preliminary approval):** Deadline for defendant to provide list of plaintiffs with contact information to Settlement Administrator.

- **June 2, 2017 (10 days from preliminary approval):** Deadline for defendant to provide CAFA notices.

- **June 6, 2017 (14 days from preliminary approval):** Deadline to mail Settlement notices.

- **June 22, 2017 (30 days from preliminary approval):** Deadline to file motion for attorneys' fees.

16

- **July 21, 2017 (45 days from notice mailing)**: Deadline for Settlement Class members to return Release of Claims forms, or reject or exclude themselves from the Settlement in writing.

- **July 22, 2017 (60 days from preliminary approval)**: Deadline to file Motion for Final Settlement Approval. Plaintiffs' Counsel will draft the motion in time to provide defendants with seven days to review and discuss changes to the motion.

- **July 26, 2017 (64 days from preliminary approval)**: Deadline for Settlement Administrator to provide defendants' counsel and plaintiffs' counsel (a) copies of signed Release of Claims forms and copies of written rejections and (b) a final list of Accepting Plaintiffs, Rejecters, and Non-Responders.

- **20 days from final approval**: Settlement administrator to make Settlement payments to Accepting plaintiffs.

(*Id.* at 14–15.)

The court finds that the notice and the manner of notice proposed by plaintiffs meets the requirements of Federal Rule of Civil Procedure 23(c)(2)(B). Further, the court finds the above schedule appropriate and adopts it, and sets the final settlement approval hearing date for September 6, 2017 at 9:30 a.m. *See* Local Rule 23(b).

## CONCLUSION

For all of the reasons stated above:

1. The court finds the settlement is preliminarily fair, reasonable, and in the best interests of the proposed class;

2. The following settlement classes are appropriate for preliminary certification:

   California Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in California at any time since February 2, 2012 to April 10, 2017, and who do not communicate a timely written request for exclusion from the Settlement.

   Pennsylvania Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in Pennsylvania at any time since February 2, 2013 to April 10, 2017 and who do not communicate a timely written request for exclusion from the Settlement.

/////

17

3. Rust Consulting, Inc. is designated and appointed as the settlement administrator in this matter;

4. The notices of class action and proposed settlement and class member information forms submitted by plaintiffs are appropriate and approved for distribution to class members;

5. The above schedule proposed by the parties is hereby incorporated in full, and all parties, class members, and the settlement administrator shall abide by it, absent good cause being shown or leave of the court being granted; and

6. The settlement administrator is directed to distribute class notice in accordance with the terms of the settlement agreement.

IT IS SO ORDERED.

Dated: __**May 23, 2017**__ ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
UNITED STATES DISTRICT JUDGE