UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC MCCULLOCH, et al., | No. 1:16-cv-00157-DAD-JLT |
| Plaintiffs, | |
| v. | ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS |
| BAKER HUGHES INTEQ DRILLING FLUIDS, INC., et al., | |
| Defendant. | (Doc. Nos. 54, 56) |

On July 21, 2017, plaintiffs filed a motion for final approval of class settlement. (Doc. No. 56.) In connection with this motion, plaintiffs also filed a motion for attorneys' fees and costs on June 22, 2017. (Doc. No. 54.) The motions are unopposed and came before the court for hearing on September 6, 2017. Attorney Daniel Brome appeared on behalf of plaintiffs. Attorney Michael Burns appeared on behalf of defendants. Oral argument was heard and the motion was taken under submission. (*Id.*) For the reasons discussed below, the court will grant plaintiffs' motion for final approval.

**BACKGROUND**

This court previously granted preliminary approval of the class action settlement in this action on May 23, 2017. (Doc. No. 53.) Pertinent factual details as well as plaintiffs' allegations

may be found in that order and will not be repeated here. Following the court's grant of preliminary approval, defendants provided the Settlement Administrator, Rust Consulting, Inc., a list of plaintiffs and their contact information. (Doc. No. 56 at 5.) On June 6, 2017 notices were mailed to plaintiffs. (*Id.*) Although eight notices were returned as undeliverable, Rust Consulting, Inc., as well as plaintiffs' counsel performed a skip trace. (*Id.*) Two notices were re-mailed and the remaining six notices previously returned as undeliverable were distributed via e-mail. (*Id.*) No objections or exclusions from the Rule 23 class members have been received and no FLSA Opt-in plaintiffs have rejected their allocations. (*Id.* at 6.) The Claims Administrator distributed 52 notices of settlement to all the class members, which includes the 20 California class members, the 16 Pennsylvania class members, and the remaining opt-ins. (*Id.*) All 52 class members are participating in the settlement for a 100 percent participation rate. (*Id.*)

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors prior to issuing its preliminary approval of the settlement, and found certification warranted. (*See* Doc. No. 53 at 12–15.) Since no other issues concerning whether certification is warranted have been raised, the court will not repeat its prior analysis here, but instead reaffirms and finds final certification appropriate. The parties stipulated to Rule 23 certification for settlement purposes only. (Doc. No. 56 at 14.) The parties assert that nothing has changed about the groups of directional drillers that were certified as part of the class following their entry into this stipulation. (*Id.*) The parties ask that the court maintain this stipulated certification for settlement purposes and the court agrees that this is appropriate. (*Id.*) Accordingly, the following classes are certified:

> California Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in California at any time since February 2, 2012 to April 10, 2017, and who do not communicate a timely written request for exclusion from the Settlement.

> Pennsylvania Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in Pennsylvania at any time since February 2, 2013 to April 10, 2017 and who do not communicate a timely written request for exclusion from the settlement.

/////

2

(Doc. No. 50 at 5–6.)[1]

In addition, for the reasons stated in the order granting preliminary approval, plaintiff Marc McCulloch is confirmed as class representative, while the law firm of Nichols Kaster, LLP, is confirmed as class counsel. Finally, Rust Consulting, Inc. is confirmed as the settlement administrator.

**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (1) notice be sent to all class members; (2) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (3) the parties seeking approval file a settlement identifying the settlement agreement; and (4) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement was previously filed on the court docket (Doc. No. 49-2) and class members have been given an opportunity to object. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A. Notice**

"Adequate notice is critical to court approval of class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class

---

[1] As indicated by plaintiffs' counsel, one of the plaintiffs, Mr. Dan Gilbert, was incorrectly treated as only a Rule 23 class member and was not provided payment based on his FLSA claims as well. (Doc. No. 60 at ¶ 2.) As a result, the parties came to an agreement and Mr. Gilbert signed a release of his FLSA claims to receive a total payment of $140,582.88. (*Id.* at ¶ 3.) In this regard, he will receive $97,204.69 as part of the initial payout and the remaining $43,378.19 will be paid through uncashed checks. (*Id.*) Should there not be any uncashed checks, that amount will be paid by reducing plaintiffs' counsel's attorneys' fees and the settlement administrator will hold that amount in escrow until the check cashing deadline. (*Id.*)

3

members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award.").

As indicated in the order granting preliminary approval of class settlement,

> [E]ach of the notice forms [ ] describe the nature of the action and the claims raised therein, namely that in violation of state and federal wage and hour laws "defendants misclassified these directional drillers as independent contractors, rather than employees, and as a result failed to pay overtime premiums, for overtime hours worked." (Doc. No. 50 at 25.) The notice forms describe the options available to the prospective plaintiffs and the effect of electing each option. (*See id.* at 40.) The notice forms also set forth the terms of the settlement, proposed attorneys' fees, and scope of the liability release. (*See id.* at 42–47.)

(Doc. No. 53 at 16.) In addition, the Settlement Administrator, Rust Consulting, was provided with a list of plaintiffs and their respective contact information. (Doc. No. 56 at 5.) As indicated above, they received eight notices returned as undeliverable and performed a skip trace to locate these eight plaintiffs. Plaintiffs' counsel also performed a separate skip trace. (*Id.*) Two notices were re-mailed and the remaining six received notice by e-mail from Rust Consulting. (*Id.*) The settlement notices advised all class members of their individual settlement amount, and the notice forms also apprised the plaintiffs of the projected attorneys' fees and costs associated with this class action. (*Id.*) None of the Rule 23 class members, or any of the FLSA Opt-ins, has objected to the amounts set forth therein. (*Id.*) Accordingly, the court finds that adequate notice has been given to all the class members.

**B. Final Fairness Hearing**

In assessing whether a district court's determination of the fairness of a class action settlement was within its discretion, the Ninth Circuit Court of Appeals balances the following

4

factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 937, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and not each need be discussed if they are irrelevant to a particular case. *Chruchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement was reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *In re Bluetooth*, 654 F.3d at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (3) "when the parties

arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluebook*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 597 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may also constitute error. *Id.* at 1224–25.

1. Strength of Plaintiffs' Case

The parties agree that the defendants' liability is still an issue that can be contested. (Doc. No. 56 at 8.) Plaintiffs' arguments are mainly that defendants were employers because they exercised sufficient control over the directional drillers, and that the FLSA exemptions do not apply because the directional drillers were paid a day rate. (*Id.*) Defendants, on the other hand, argue that they were not an employer because they contracted with third party labor providers. (*Id.*) In the alternative, defendants contend that "even if plaintiffs were employees they were subject to the administrative, executive, combination, or highly compensated exemptions." (*Id.*) In addition, defendants argue that plaintiffs enjoyed significant periods of downtime during shifts after being relieved of their duties. (*Id.* at 9.) According to defendants, in proving that they were an employer, plaintiffs would instead have to show that no FLSA exemptions apply because most had significant experience or worked independently without supervision. (*Id.*) Despite these

6

arguments by defendants, plaintiffs believe their claims are meritorious and warrant potential litigation. (*Id.*) It is against this backdrop that the parties have been able to reach a resolution of this action. (*Id.*) The court finds that the settlement here, as posited by the parties, appropriately balances the strengths and weaknesses of the plaintiffs' case specifically with respect to "employer status, FLSA exemptions, and hours worked, while providing significant recovery for class members." (*Id.*) This settlement is particularly fair and reasonable since, according to the parties, it will pay out 92 percent of the plaintiffs' realistic value of the claims after attorneys' fees and costs. (*Id.*) It is clear that plaintiffs' case, despite its strengths, was seriously contested by defendants in this litigation. Consideration of this factor therefore weighs in favor of the court concluding this settlement should be approved.

2. <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk of Maintaining Class Action Status Through Trial</u>

The court notes that absent class settlement, fully litigating this case would be costly given the number of complex factual and legal issues, and the fact that the class members are spread out across the country. (*Id.* at 9–10.) It is likely that defendants would have contested class certification, sought decertification, and moved for summary judgment in their favor, requiring additional discovery in the case. (*Id.*) Even if issues such as whether the plaintiffs were independent contractors and whether the exemptions applied were to be resolved through summary judgment, plaintiffs would still need to prove at trial the number of hours worked. (*Id.* at 10.) "[W]age and hour trials are complex, expensive, and unpredictable." (*Id.*) If plaintiffs were successful at trial, it is likely that defendants would appeal. (*Id.*) In light of these considerations, the court finds that given the complexity of the issues, the expense of litigation, and the interest of judicial economy, the settlement here provides an appropriate form of relief.

3. <u>The Amount Offered in Settlement</u>

The total settlement amount offered here is $3,000,000. (*Id.*) The average settlement payment per person amounts to $42,625 after attorneys' fees and costs. (*Id.*) Plaintiffs have requested $750,000 in attorneys' fees and $20,000 costs. (*Id.* at 6.) Unexpended costs are included in the settlement allocation. (*Id.*) Plaintiffs estimate $40,000 to be deducted for half of

the employer-side taxes. (*Id.*) Approximately $2,190,000 has been allocated to the 48 opt-in plaintiffs and class members, to be distributed based on their individual earnings and the total number of days worked. (*Id.*) The settlement agreement provides that anything remaining after the distribution of checks and expiration of time shall be donated to Legal Aid at Works as a *cy pres* beneficiary. (*Id.*) The settlement agreement does not provide for any incentive payment for the named plaintiff. The payments range from at least $220.28 for an employee who worked only one covered week up to $243,473.62 for the named plaintiff who worked for defendant, Baker Hughes, for three years. (*Id.* at 11.) Accordingly, the workers who worked the most hours within the statute of limitations and have the most significant claims will receive the largest payment. (*Id.*) As stated, the settlement payout reflects 92 percent of the estimated potential value of the class members' claims. The court agrees that the scope of this recovery strongly weighs in favor of approval. (*Id.*) Additionally, the court notes that defendants no longer classify directional drillers as independent contractors.

As found in the court's prior order granting preliminary approval, this settlement amount is fair and reasonable in relation to the potential recovery and the court's analysis of that issue remains unchanged. The amount offered in the settlement supports final approval of the settlement.

    4. <u>Extent of Discovery Completed and the Stage of the Proceedings</u>

The parties engaged in significant discovery prior to negotiating the settlement agreement. In addition to exchanging tens of thousands of documents, the named plaintiff participated in a Rule 30(b)(6) deposition. (*Id.* at 12.) During discovery, defendants also provided plaintiffs' counsel with data regarding the class members' work and pay history. (*Id.*) Plaintiffs' counsel was able to use this information during class interviews and was able to assess the value of the plaintiffs' claims prior to mediation. (*Id.*) As a result of productive discovery, the parties were able to engage in arms-length negotiations to reach a settlement in this case. (*Id.*)

    5. <u>Experience and Views of Counsel</u>

Plaintiffs' counsel is a national law firm that specializes in litigating wage and hour class actions, particularly for workers in the oil industry. (*Id.*) As the parties note, this court in its

8

order granting preliminary approval of class settlement recognized that "[t]his case's early resolution can partly be attributed to counsel's experience representing thousands of employees in wage and hour cases for thirty years, particularly within the oil and gas industry." (Doc. No. 53 at 14.) Based on their years of experience, plaintiffs' counsel believes the settlement is fair and reasonable and presents clear advantages over continued litigation - prompt and certain payment. (Doc. No. 56 at 12.) According to the parties, this agreement was procured by arms-length negotiations through a mediator and by experienced counsel on both sides after significant investigation.

      6.    Reaction of the Class to Proposed Settlement

As stated, no Rule 23 class members have objected to the settlement and all FLSA Opt-ins have returned their claim forms. (*Id.* at 13.) The settlement administrator and plaintiffs' counsel sought to deliver notices to all class members and even performed skip traces or contacted class members, whose notices were otherwise undeliverable, via e-mail. (*Id.*) The parties maintain that in light of these steps, the 100 percent participation rate, and the lack of any objections having been received, the settlement agreement warrants approval. (*Id.*) Accordingly, consideration of this factor weighs significantly in favor of granting final approval and the court therefore approves the settlement as fair, reasonable, and adequate.

      7.    The FLSA Settlement

The parties maintain that the settlement agreement satisfies *Lynn's Food Stores*, which is a less rigorous standard than Rule 23. (*Id.* at 13.) While defendants' status as an employer, the applicability of the FLSA exemptions, and total number of hours worked by plaintiffs were disputed, the court finds the agreement reasonable because the class members will receive 92 percent of the estimated potential value of their claims. (*Id.*) In addition, all FLSA Opt-ins are participating in the settlement. (*Id.*)

      8.    *Cy Pres* Recipient

*Cy pres* award allows for "aggregate calculation of damages, the use of summary claim procedures, and distribution of unclaimed funds to indirectly benefit the entire class." *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). "To ensure

that the settlement retains some connection to the plaintiff class and the underlying claims, however, a *cy pres* award must qualify as 'the next best distribution' to giving the funds directly to class members." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quoting *Six Mexican Workers*, 904 F.2d at 1308).

Under the terms of the settlement agreement, in the event settlement checks remain uncashed after 90 days, those funds shall be donated to Legal Aid at Work, formerly known as the Legal Aid Society – Employment Law Center, as a *cy pres* beneficiary. (*Id.* at 14.) Legal Aid at Work is a non-profit organization that "'works to ensure that all workers benefit from the laws that regulate pay and work hours.'" (*Id.* at 14 (quoting *Eddings v. Health Net, Inc.*, No. CV-10-1744-JST (RZX), 2013 WL 3013867, at *4 (C.D. Cal. 2013) (approving Legal Aid at Work as a *cy pres* beneficiary in a wage and hour class action))). The court finds a sufficient nexus between the class and Legal Aid at Work, and accordingly approves it as the *cy pres* beneficiary.

## ATTORNEYS' FEES AND COSTS

Plaintiffs have filed a motion for attorneys' fees and costs in connection with their motion for final approval of class settlement. (Doc. No. 54.) For the reasons discussed below, the court will grant this motion as well.

**A. The Requested Attorneys' Fees are Reasonable**

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 944 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 988, 994 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Because this case is premised on federal question jurisdiction (Doc. No. 1 at 1), federal law governs the award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047

(9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."); *see also* 10 Fern Smith, *Moore's Federal Practice* Civil § 54.171 (2015) ("In cases within the district courts' federal-question jurisdiction, state fee-shifting statutes generally are inapplicable."). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or lodestar method" for awarding attorneys' fees. *Vizcaino*, 290 F.3d at 1047. The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of the lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, plaintiffs are requesting attorneys' fees at 25 percent of the common fund, or $750,000. (Doc. No. 54 at 3.) This attorneys' fees request is supported by the record before the court. The notice forms issued specifically informed the class members about the amount of attorneys' fees and costs sought. (*Id.*) As stated, no objections to the attorneys' fees sought by counsel have been made by class members. Plaintiffs' counsel avers that assessing fees from the common fund is appropriate because the amount allocated to each individual is "undisputed and mathematically ascertainable," where individual payments here will be assessed by considering:

/////

11

> . . . the individual's day rate, actual days worked, consent for filing date and applicable statute of limitations, an assumption that each shift included 12.5 hours of compensable work time, an assumption of 100% chance of success on overtime state and federal law claims, and an assumption of 50% risk of loss on derivative California law claims, among other factors.

(*Id.* at 5.) Plaintiffs here are not seeking attorneys' fees above the 25 percent benchmark amount. After deducting attorneys' fees and costs, $2,190,000, or 92 percent of the calculated damages, will still be distributed among the class members, at an average of $45,625 per individual based on the number of hours and weeks worked. (*Id.* at 7.) Plaintiffs' counsel maintains that the case was handled on a contingency-basis and that payment for time spent litigating the case and reimbursement for out of pocket costs were not received in advance of litigation. (*Id.* at 11.) Plaintiffs' counsel has expended a total of 637.5 hours on this case. (*Id.* at 12.) The parties have exchanged tens of thousands of documents during discovery and engaged in a Rule 30(b)(6) deposition for the named plaintiff. (*Id.* at 9.) The evidence before the court reflects a significant investment of time and effort by counsel in obtaining this favorable settlement. These considerations support the benchmark attorney fee award in this case.

Finally, a lodestar cross-check bolsters the attorneys' fees request even further. Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)). Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded

in common fund cases when the lodestar method is applied.") (quoting Newberg).

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017). Some judges in the Fresno division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (concluding that Fresno division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). Here, the court generally adopts the hourly rates proposed by class counsel for lodestar cross-check purposes as appropriate.

Additionally, counsels' declarations are sufficient to establish the number of attorney hours expended on this litigation. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail

13

neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

Plaintiffs' counsel's fees under the lodestar method amount to $189,927.50 and represents 637.5 hours of billable work at an hourly rate of $175 for paralegals, $350 for associate attorneys, and $525 for partners. (*Id.* at 12.) Additionally, plaintiffs' counsel anticipates an additional forty hours of work to resolve the case, which brings the lodestar value to $203,052.50. (*Id.*) The hours spent in calculating the lodestar method include: investigating claims, interviewing potential class members and opt-in plaintiffs, preparing discovery, reviewing documents, drafting the motion for conditional certification, preparing and taking depositions, assessing damages, conducting mediation, and briefing the motion for preliminary approval of class settlement as well as the current motion. (Doc. No. 54-1 at 3.) Of the 637.5 hours, Attorney Daniel Brome billed 265.8 hours at an hourly rate of $350. (*Id.*) Attorney Brome has been practicing law for six years, since 2011. (*Id.*) Attorney Michele Fisher expended 41.5 hours on the case at an hourly rate of $525. (*Id.*) Attorney Fisher has been practicing law for over 17 years, has been partner at Nichols Kaster, LLP since 2008, and has represented over 100,000 individuals in wage and hour cases particularly in the oil and gas industry. (*Id.*) Attorney Mathew Morgan expended 49.5 hours on the case at an hourly rate of $525. (*Id.* at 5.) He was admitted to the California Bar in 2000 and became partner in 2011. (*Id.*) The court finds these rates consistent with the rates applied in other cases using the lodestar cross-check method. Here, awarding attorneys' fees at a 25 percent benchmark of the common fund would yield a lodestar multiplier of 3.95, which is within the range of acceptable lodestar multipliers previously approved by this court and others. (*Id.* at 15.)

Accordingly, and in light of the significant relief obtained by counsel on behalf of the class members, the court finds that the requested attorneys' fee award is reasonable.

**B. Counsels' Requested Expenses are Reasonable**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client

14

and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

As indicated in counsel's supplemental declaration, counsel incurred $16,537.49 in unreimbursed costs during the course of litigation. (Doc. No. 60 at ¶ 4.) At the time of preliminary approval, plaintiffs' counsel had incurred $15,857.64 in unreimbursed costs during the course of litigation and based on this amount, requested $20,000 based on future anticipated costs. (*Id.*) These costs include filing fees, postage, Westlaw and PACER usage, deposition expenses, and expenses related to travel in connection with this suit. (Doc. No. 60-1, Ex. A.) Since the actual amount expended is less than the requested amount of $20,000, the difference of $3,462.51 will be allocated pro rata to plaintiffs. (Doc. No. 60 at ¶ 4.) The court finds that these are reasonable expenses to be properly awarded in the amount sought.

## CONCLUSION

For all of the foregoing reasons, the court finds certification is warranted here and that the settlement is fair, reasonable, and adequate. Therefore, plaintiffs' motion for final approval of class settlement (Doc. No. 56) and motion for attorneys' fees and costs (Doc. No. 54) are granted.

Accordingly,

1. The court certifies the following classes for settlement purposes only:

> California Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in California at any time since February 2, 2012 to April 10, 2017, and who do not communicate a timely written request for exclusion from the Settlement.

> Pennsylvania Class: All individuals who performed directional drilling services for defendants as consultants/independent contractors in Pennsylvania at any time since February 2, 2013 to April 10, 2017 and who do not communicate a timely written request for exclusion from the settlement.

2. The law firms of Nichols Kaster, LLP is appointed as class counsel;

3. Plaintiff Marc McCulloch confirmed as class representatives;

4. Payment to the Rule 23 class members and FLSA Opt-ins shall be made in accordance with the terms of the settlement

5. The court awards class counsels' attorneys' fees in the sum of $750,000, and class counsel shall be reimbursed for litigation costs amounting to $20,000.

6. The parties are directed to abide by the settlement agreement, and the court will retain jurisdiction over this matter for the purpose of enforcing the settlement agreement; and

7. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **November 22, 2017**

_Dale A. Drozd_
UNITED STATES DISTRICT JUDGE